

**Miami Postal Service Credit Union**
2190 NW 72nd Avenue
Miami, Florida 33122-1824
(305) 592-7733

**OPEN-END CREDIT PLAN**
**ADVANCE RECEIPT**

| BORROWER 1 NAME | DATE | ACCOUNT NUMBER |
|---|---|---|
| SANDRA B FORD | 06/02/2009 | |
| BORROWER 2 NAME | | |

## SECURITY INFORMATION

THE ADVANCE IS SECURED BY YOUR SHARES AS DESCRIBED UNDER SECURITY INTEREST, ALL PROPERTY SECURING OTHER PLAN ADVANCES AND LOANS RECEIVED IN THE PAST OR IN THE FUTURE, AND THE FOLLOWING:

| SHARES PLEDGED: | ACCOUNT NUMBER | | AMOUNT $ | | ACCOUNT NUMBER | | AMOUNT $ |
|---|---|---|---|---|---|---|---|
| MOTOR VEHICLE: | YEAR 2008 | MAKE INFINITI | MODEL FX V6 | | BODY TYPE SUV | SERIAL or VIN NUMBER JNRAS08U08X104576 | |
| OTHER COLLATERAL: | | | | | | | |

## CREDIT INFORMATION

| DAILY PERIODIC RATE | ANNUAL PERCENTAGE RATE | INTEREST RATE IS: | APPROXIMATE TERM | NEW BALANCE THIS SUBACCOUNT |
|---|---|---|---|---|
| 0.017233 % | 6.2900 % | FIXED | 60 MONTHLY PAYMENTS | $18,716.55 |

| AMOUNT OF ADVANCE | PAYMENT AMOUNT | DUE DATE | PAYMENT FREQUENCY | BALLOON PAYMENT* | | LINE OF CREDIT LIMIT | REMAINING LIMIT |
|---|---|---|---|---|---|---|---|
| $18,716.55 | $392.20 | 06/30/2009 | MONTHLY | $ | due on | $ | $ |

| OTHER FEES (Amount and Description) $ | GAP (a portion will be retained by us) $ |
|---|---|

**Estimated Monthly Payments:** Any payment terms disclosed are estimated for the purposes of calculating your monthly payment only. If payments are not made as scheduled, or future advances are taken, or additional costs are incurred, the last payment may vary from the amount disclosed, or the number of required payments may increase.

**Security Interest:**
By accepting, using, or accessing the advance proceeds outlined above, Borrower agrees to abide by the terms of the Credit Agreement and **GRANTS TO THE CREDIT UNION A SECURITY INTEREST IN THE PROPERTY DESCRIBED ABOVE.** This pledge of security is governed by the Security Agreement that Borrower entered into when the Open-end Plan was opened. Property given as security for this loan or for any other loan will secure all amounts I owe the credit union now and in the future. This includes a security interest in all my shares in the credit union. However, for purposes of this advance, the credit union specifically waives any security interest it may have in my primary residence or non-purchase money household goods as explained in the Security Agreement.

*☐ **Balloon Auto Loan:** If checked, my loan is a balloon auto loan and I will execute an Addendum with Auto Financial Group, which will govern this advance. Those documents are hereby made a part of my Advance Receipt and Open-end Credit Plan as if fully set forth herein. I also understand that I may exercise certain options with regard to the payment and/or refinancing of my "balloon payment", and that those options are set forth in, and governed by, the Addendum. I understand that a "balloon payment" is any payment more than twice my regular monthly payment and that such a balloon payment is disclosed above.

**Negative Information Notice:** You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.

☐ **CONSUMER'S CLAIMS AND DEFENSES -- IF CHECKED, SEE NOTICE BELOW**

NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

COPYRIGHT 2006 Securian Financial Group, Inc. All rights reserved.

**EXHIBIT A**



**Miami Postal Service Credit Union**
2190 NW 72nd Avenue
Miami, Florida 33122-1824
(305) 592-7733

**OPEN-END CREDIT PLAN, DISCLOSURES, CREDIT AGREEMENT, AND SECURITY AGREEMENT**

| ACCOUNT NUMBER |
|---|
| |

| BORROWER'S NAME AND ADDRESS | 1230 NW 178 TERR | DATE OF BIRTH |
|---|---|---|
| SANDRA B FORD | MIAMI FL 33169-0000 | |
| CO-BORROWER'S NAME AND ADDRESS | | DATE OF BIRTH |

### AN OPEN-END CREDIT PLAN FROM YOUR CREDIT UNION

This Open-end Credit Plan is a quick and convenient way for you to obtain a loan when you need it. This is an open-end, multi-featured credit plan. We anticipate that you will borrow money (called "advances") from time to time under the Plan. Several types of credit, called "subaccounts", are available under the Plan. We may, but do not have to, set credit limits on certain subaccounts or on the entire plan as a whole. Advances may be applied for by telephone, via the Internet, fax, mail or in-person.

#### MEMBER'S DISCLOSURE STATEMENT

**HOW TO COMPUTE THE FINANCE CHARGE:** The Finance Charge is the total cost to you of obtaining credit through this credit plan. The Finance Charge begins to accrue on the date of each advance and accrues for each day the balance remains unpaid. The unpaid balance for each day is multiplied by the daily periodic rate to determine the Finance Charge for that day. The sum of these daily charges is the Finance Charge you will pay. The unpaid principal balance is that balance which is in your account at the close of business after all transactions, including payments and new borrowings, have been entered.

**Security Interest:** Collateral is required for all advances. The credit union will take a security interest in all your shares and deposits in the credit union, including future additions, as security for advances under this plan. Additionally, the credit union will take a security interest in the property purchased with the advance or in property identified in the Advance Receipt form or other security agreement for each secured advance under this plan. Property given as security for any other loan held by the credit union will also secure all amounts you owe under this plan (see Security Agreement beginning on page 7 of this document).

**Property Insurance:** You are required to carry insurance against loss by fire, theft, or collision and comprehensive coverage on motor vehicles and other property pledged as security on your loan. The insurance may be obtained by any insurance broker of your choice. The insurer waives all rights of subrogation against the consumer. If you do not obtain property insurance, the Credit Union may provide it for you at your expense.

**Late Charges:** If a payment is 15 days or more late, you will be charged 5% of the monthly payment, not to exceed $20.00.

**Credit/Debit Cards:** The Credit Union will issue you debit cards, loan drafts, or credit cards (including, but not limited to drafts, cards, plates, coupon books, debit cards or other consumer credit devices) if they are now or in the future made part of your open-end credit plan.

### CREDIT PLAN RATES
*See separate Open-end Credit Plan Rates & Fees Addendum for Type of Transactions, Credit Plan Rates, and Fees that will apply to your Plan.*

---

**NOTICE: SEE ATTACHED NOTICE FOR IMPORTANT INFORMATION REGARDING YOUR RIGHTS TO DISPUTE BILLING ERRORS.**

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

## STATE NOTICES

**OHIO RESIDENTS ONLY:** The Ohio laws against discrimination require that all creditors make credit equally available to all creditworthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio Civil Rights Commission administers compliance with this law.

**WISCONSIN RESIDENTS:** Marital Status: ☐ Married  ☐ Unmarried  ☐ Legally Separated
If married: the name of my spouse is _____
Spouse's SSN: _____  ☐ Spouse's Address (if different) _____
Notice: No provision of any marital property agreement, unilateral statement under Section 766.59, or court decree under Section 766.70 will adversely affect the rights of the Credit Union unless the Credit Union is furnished a copy of the agreement, statement or decree, or has actual knowledge of its terms, before the credit is granted or the account is opened.
**MARRIED WISCONSIN RESIDENTS APPLYING FOR AN INDIVIDUAL ACCOUNT:** By signing here, I state that the credit granted will be incurred in the interest of the marriage or family of the Borrower(s).
X _____

## BORROWER'S ACKNOWLEDGEMENT

By signing below, I (we) understand and agree as follows:

I acknowledge that I have read, understand and accept the terms and conditions of the Open-end Credit Plan, Disclosures, Credit Agreement, and Security Agreement. I acknowledge that I have received copies of these documents. I also agree to be bound by any and all Advance Receipts and understand that by endorsing any advance proceeds check, or by otherwise accepting, using or accessing my advance proceeds, I am bound to the aforementioned documents. If I have applied for a credit card, I will be provided with a separate Credit Card Agreement and Disclosures and understand the Agreement will be effective when I or an Authorized User uses the card or the account, or if I fail to cancel the account by returning my card(s) to the Credit Union within 30 days of receipt.

I understand and acknowledge that no additional signatures shall be required for you to enforce the terms of the above agreements, however I may be required to provide additional signatures if you deem it necessary. I also agree to provide the credit union with any information necessary to perfect your security interest in any collateral pledged in connection with my advances, either now or in the future. I understand that you may periodically update my credit information in order to evaluate my on-going creditworthiness, without any additional signatures, for as long as my plan is open or an outstanding balance exists. You may use and communicate any information gathered for a lawful purpose as permitted by law.

**Security Interest and Lien on Accounts:** By accepting, using or accessing any advance proceeds under this Open-end Credit Plan, I grant the Credit Union a security interest in all goods, property, or other items purchased under this Plan either now or in the future, or in any other collateral given now or at the time of any future advance, or given at any other time in connection with the Open-end Plan, in accordance with my Security Agreement. I also agree to abide by the terms of the Security Agreement and any Advance Receipt or similar document.

**Cross-collateralization:** I acknowledge that any collateral given in connection with any advance under this Plan shall secure all other advances under this Plan, whether taken now or in the future, in accordance with my applicable security agreement(s). All property given as security for another loan held by the Credit Union will also secure amounts I owe under this plan with the exception of my primary residence and non-purchase household goods.

**Pledge of Shares:** By accepting, using or accessing any advance proceeds under this Plan, I pledge all of my shares and deposits in Miami Postal Service Credit Union as security for advances under this Plan in accordance with the terms of the Credit and Security Agreements. IF I HAVE A CREDIT CARD UNDER THIS PLAN, THIS PLEDGE OF SHARES WILL ALSO SECURE ALL AMOUNTS I OWE UNDER THE CREDIT CARD ACCOUNT.

If I have applied for voluntary credit insurance, I acknowledge receipt of the credit insurance Application and Certificate. If I purchase voluntary credit insurance or other products in connection with this loan, I understand that a portion of the premium or fee I pay will be retained by the credit union (or paid back to the credit union by the service provider) as compensation for making these services available to me. I understand that, if credit insurance is elected, coverage will also apply to all advances now and in the future, unless I instruct otherwise.

**Negative Information Notice:** You may report information about my account to credit bureaus. Late payments, missed payments, or other defaults on my account may be reflected in my credit report.

**IMPORTANT NOTICE ABOUT PROCEDURES FOR OPENING A NEW ACCOUNT**
To help the government fight the funding of terrorism and money laundering activities, Federal law requires all financial institutions to obtain, verify, and record information that identifies each person who opens an account. What this means for me: When I open an account, you will ask for my name, address, date of birth, and other information that will allow you to identify me. You may also ask to see my driver's license or other identifying information.

| BORROWER'S SIGNATURE | DATE | CO-BORROWER'S SIGNATURE | DATE |
|---|---|---|---|
| X *Sandra Ford* | 6/2/09 | X | |

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

## GROUP CREDIT INSURANCE

**Florida Credit Insurance Acknowledgement Form - Pursuant to Florida Statutes 627.679(1)(c)**
By initialing below, (1) I acknowledge that I have the option of assigning any other policy or policies I own or may procure for the purpose of covering this loan and that credit insurance coverage need not be purchased from the credit union or anyone else in order to obtain the loan. (2) I understand that I must be under a certain age to be eligible for credit insurance and that coverage will stop when I reach a certain age, as disclosed in the Application for Group Credit Insurance contained below. (3) I understand that I have 30 days from the date coverage takes effect to rescind coverage with a full refund of any premiums that I have paid.

_SF_ Applicant Initials  _____ Co-applicant Initials

## APPLICATION FOR GROUP CREDIT INSURANCE
Minnesota Life Insurance Company, 400 Robert Street North, St. Paul, MN 55101-2098

I (we) are applying for the credit insurance coverage(s) selected below and agree to pay the required premium. I (we) understand that fees may be paid by the insurer in connection with coverage to the sponsor of this plan and/or its affiliates or designates. I (we) understand this insurance is voluntary and that I (we) may terminate it at any time. I (we) also agree that:

1. I am eligible for life insurance if I am presently under age 71. **In no event is life insurance coverage to remain in force beyond the date you reach age 71. Please read the "When does your insurance terminate?" provision.**
2. If joint life insurance is selected, we are eligible if the older applicant is presently under age 71. We must be jointly and individually liable under the loan. Co-signers or guarantors are not eligible for insurance. **In no event is joint life insurance coverage to remain in force beyond the date the older of the two of you reaches age 71. If insurance terminates on the older of the two of you due to attainment of age 71, insurance will continue on the other debtor under single life insurance coverage. Please read the "When does your insurance terminate?" provision.**
3. I am eligible for disability insurance if I am presently under age 66. I also must be presently employed outside the home for wages or profit for 30 hours or more per week and have been so employed for 30 days or more before this date. **In no event is disability insurance coverage to remain in force beyond the date you reach age 66. Please read the "When does your insurance terminate?" provision.**
4. A person signing this application as co-applicant is not eligible for disability insurance.

**The following question must be answered to determine my (our) eligibility for insurance:**

| APPLICANT | CO-APPLICANT | |
|---|---|---|
| ☐ YES ☒ NO | ☐ YES ☐ NO | During the last two years, have you or your co-applicant been advised of or treated for: cancer, heart attack or coronary artery disease, stroke, or cirrhosis; or have you or your co-applicant been diagnosed for Acquired Immune Deficiency Syndrome (AIDS)? |

My (our) answer to the above question is true to the best of my (our) knowledge and belief. If either my co-applicant or I answer "Yes" to this question, we understand that we are not eligible for insurance and will not be insured.
The effective date of my (our) insurance will be the date of this application, the date the eligible loan is disbursed, or the date the note evidencing the loan is signed, whichever date is later.
**Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.**
**THIS INSURANCE CONTAINS LIMITATIONS/EXCLUSIONS PERTAINING TO BENEFITS PAYABLE.**

COVERAGE REQUESTED (*MONTHLY PREMIUM PER $100.00 OF OUTSTANDING LOAN BALANCE.)

| ☒ Yes ☐ No | Single Life | 6.0¢* | ☐ Yes ☒ No | Joint Life | 9.6¢* | ☒ Yes ☐ No | Credit Disability | 20.0¢* |
|---|---|---|---|---|---|---|---|---|

| APPLICANT'S SIGNATURE | DATE | CO-APPLICANT'S SIGNATURE (Joint Life Only) | DATE |
|---|---|---|---|
| X _Sandra Ford_ | 6/1/09 | X | |

99-60027.9 Rev. 4-2003

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" WILL MEAN ANY PERSON WHO EXECUTES THE OPEN-END CREDIT PLAN BY SIGNING THIS OPEN-END CREDIT PLAN OR ANY ADVANCE RECEIPT OR SIMILAR DOCUMENT, OR ANY PERSON WHO ENDORSES A PROCEEDS CHECK OR OTHERWISE ACCEPTS, ACCESSES, OR USES PROCEEDS UNDER THIS PLAN. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

## CREDIT AGREEMENT

**Agreement to Terms:** By signing this Open-end Credit Plan, and/or by accepting, using, or accessing any proceeds under this plan, I agree to the terms and conditions of the Open-end Credit Plan, Disclosures, Credit Agreement, and Security Agreement, and any and all Advance Receipts, and any future amendments thereto, and promise to pay you all amounts due.

**Advances, Credit Limits, Plan Access, and Periodic Statements:** I may apply for advances under this Plan in any manner allowed by the Credit Union, including telephone, e-mail, Internet, fax, mail or in person. You reserve the right to refuse to make an advance without affecting the liability of any co-borrower. Advances will at no time exceed any credit limits as set forth in the loan policy of the credit union. If an advance is approved, you may issue a proceeds check or draft to me; or deposit advance proceeds into my share account or checking account; or issue to me credit cards, ATM/Debit cards, loan drafts or other consumer credit devices if they are now or in the future made part of this Open-end Credit Plan in order to directly access my Plan and obtain advances. I will receive a periodic statement describing the activity on my Plan during the applicable billing cycle.

**Balloon Auto Loan:** If my loan is a balloon auto loan, I will execute an Addendum with Auto Financial Group which will govern my loan. Those documents are hereby made a part of this Plan as if fully set forth herein. I also understand that I may exercise certain options with regard to the payment and/or refinancing of my "balloon payment", and that those options are set forth in, and governed by, the Addendum. I understand that a "balloon payment" is any payment more than twice my regular monthly payment and that such a balloon payment will be disclosed on my Advance Receipt.

**Overdraft Protection:** If I request Overdraft Protection, any overdrafts on my checking account will be charged against my Personal Signature Loan limit, if elected, and will be subject to the Finance Charge applicable to my Personal Signature Loan.

**Liability for Unauthorized Use:** If I use an ATM/Debit card to access my plan, I may be liable for the unauthorized use of the card. I must tell the Credit Union at once if I believe my ATM/Debit card has been lost, stolen, or used without my permission. I may contact the Credit Union at: Miami Postal Service Credit Union, 2190 NW 72nd Avenue, Miami, Florida 33122-1824 or call (305) 592-7733. I will not be liable for unauthorized use that occurs after I notify the Credit Union of the loss, theft, or possible unauthorized use. If the card is used to obtain unauthorized advances directly from the Plan, my total liability will not exceed $50.00. If the unauthorized withdrawal is from a checking account, my liability is governed by the Regulation E disclosures I received at the time I received my ATM/Debit card, even if the withdrawal results in an advance being made from my overdraft subaccount under my Open-end Credit Plan.
I also have certain rights and responsibilities under the Fair Credit Billing Act if I believe my periodic statement is incorrect. See Billing Rights Notice at the end of this Credit Agreement.

**Advance Receipts:** If I take an advance under this Plan, I will receive an Advance Receipt outlining the transaction and describing any collateral given as security for that advance. The Advance Receipt is subject to the terms of the Credit Agreement.

**Payments:** The minimum monthly payment and due date will be set and disclosed to me at the time each advance is made. My minimum payment will be based upon the amount of my outstanding balances immediately after my most recent advance. My minimum payment will not change unless I request additional advances or fail to keep my agreement. I may pay the credit balance in full or in part at any time without penalty. However, minimum periodic payments are required on each loan account as long as any balance exists.

**Allocation of Payments and Additional Payments:** Payments and credits shall be applied in the following order: any amounts past due; any fees or charges owing, including any fees or premiums for additional products purchased; accrued interest or finance charges; outstanding principal. Payments made in addition to regularly scheduled payments shall be applied in the same order.

**Advances by Mail:** If an advance is being made by mail, interest on that advance begins when the advance proceeds are mailed. If the advance refinances an earlier advance, said advance will be cancelled and refinanced as of the date of the new advance.

**Credit Insurance:** Credit life and/or credit disability insurance is voluntary and not a condition of opening my Plan or obtaining any advance. Borrower will only have this coverage if Borrower applies for the coverage, meets the eligibility requirements, and agrees to pay the premiums. The premium will be charged and collected monthly and will become part of my minimum monthly payment. Borrower understands that, if credit insurance is elected, coverage will also apply to all advances now and in the future, unless Borrower instructs otherwise. If Borrower fails to pay the insurance premiums, Credit Union can cancel the coverage or, at its option, pay the premiums and add it to Borrower's outstanding plan balance. Borrower may cancel coverage at any time. Credit Union retains a portion of the premium (or a portion is paid back to the credit union by the service providers) as compensation for making this service available. See Certificate for specific terms and conditions of the insurance contract.

**Property Insurance:** I am required to carry insurance against any loss by fire, theft, or collision and comprehensive coverage (**maximum deductible $1000**) on motor vehicles and other property pledged as security on my loan. The insurance may be obtained by any insurance broker of my choice. The insurance coverage must be maintained in force for the term of the loan advance, and any extension thereof, and provide for a loss payable endorsement in favor of Miami Postal Service Credit Union. **The loss payee endorsement must be received by the Credit Union within 30 days of my loan advance date.** I agree that if I should fail to abide by the terms and conditions of the Credit Agreement to provide insurance coverage, the Credit Union is authorized to obtain insurance to protect the Credit Union's interest in the property and the total cost of insurance (the premium and the premium finance charge, including tracking and administrative costs and commissions, you may impose in connection with the placement of the insurance) will be added to the present loan balance. I acknowledge that the insurance placed by the Credit Union is without benefit to me individually, does not satisfy the State insurance requirements and is primarily for the protection of the Credit Union. I also understand that coverage obtained by the Credit Union may be considerably more expensive than coverage I could obtain on my own. If the Credit Union places coverage to protect its interest, the total cost of insurance added to my loan balance will be paid as follows at the Credit Union's discretion: a) upon demand for immediate payment of the cost of coverage, b) increase my periodic payment by an amount sufficient to pay the premium within the scheduled approximate loan term or otherwise allowed by applicable law, or c) the loan term may be extended by the amount of time necessary to payoff any cost of coverage added. I assign the Credit Union the right to receive and endorse any check or draft representing the proceeds of any insurance on such property, to apply those proceeds to the sums I owe to the Credit Union, and I direct any insurer to pay those proceeds directly to the Credit Union. I further authorize the Credit Union to provide their Insurance Service Center with the necessary information for verification of adequate coverage. I understand and acknowledge that the lender or any entity affiliated with the lender may receive compensation or reimbursement of expenses related to any insurance premiums added to my loan by the lender.

**Default:** *The following provision applies to borrowers in Idaho, Kansas, and Maine:* I will be in default if (1) I do not make a payment of the required amount when due; or (2) you believe the prospect of payment, performance, or realization on any property given as security is significantly impaired.
*The following provision applies to borrowers in Wisconsin:* I will be in default if any of the following occur: (a) I fail to make a payment when due on two (2) occasions within any 12-month period; OR (b) I breach any term or condition of this Open-end Plan, which breach materially impairs my ability to pay amounts when due or materially impairs the condition, value, or protection of your rights to or in any collateral securing this transaction.
*The following provision applies to all other borrowers:* I shall be considered in default if any of the following occur: (1) If I break any promise made under this Credit Agreement or under the Security Agreement; or (2) if I do not use the money you advanced me for the purpose stated in my application; or (3) if you should, in good faith, believe that prospect of payment, performance or realization of the collateral, if any, is impaired; or (4) if I die; or (5) if I file a petition in bankruptcy, insolvency, or receivership or am put involuntarily into such proceedings; or (6) if the collateral, if any, given as security for this account is lost, damaged or destroyed, or if it is levied

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" WILL MEAN ANY PERSON WHO EXECUTES THE OPEN-END CREDIT PLAN BY SIGNING THIS OPEN-END CREDIT PLAN OR ANY ADVANCE RECEIPT OR SIMILAR DOCUMENT, OR ANY PERSON WHO ENDORSES A PROCEEDS CHECK OR OTHERWISE ACCEPTS, ACCESSES, OR USES PROCEEDS UNDER THIS PLAN. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

against, attached or garnished; or (7) If I do not pay on time any of my current or future debts to you; or (8) if anyone is in default of any security agreement given in connection with any advance under this Plan; or (9) If I make any false or misleading statements in any credit application or update of credit information; or (10) I am in default of any other loan or security agreement I have with the Credit Union; or (11) I use the Plan for any illegal purpose or transaction as determined by applicable law. If I default, you may, at your option, declare this account immediately due and payable, and I must immediately pay to you at that time the total unpaid balance, as well as the Finance Charge to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees. Costs of collection include, but are not limited to, repossession fees, appraisals, environmental site assessments, casualty damage insurance coverage, and attorney's fees for any action taken by an attorney in order to collect this loan or preserve or protect the credit union's rights and remedies, including, without limitation, pre-suit demands for payment, pre-suit mediation or settlement negotiations, investigation and assessment of the credit unions' rights, participation in bankruptcy cases, matters, and proceedings (including, without limitation, filing proofs of claim, pursuing reaffirmation agreements, attending meetings of creditors, and pursuing complaints, motions, and objections that relate in any way to the credit union's collateral or right to payment), collateral disposition, non-bankruptcy suits and/or administrative actions, and appeals. The principal balance in default shall bear interest at the contract rate.

Action *Upon Default: The following provision applies to borrowers in Colorado, District of Columbia, Kansas, Maine, Massachusetts, Missouri, Nebraska, and West Virginia:* Once I have defaulted, and after the expiration of any right I may have under applicable state law to cure my default, you can demand immediate payment of the entire unpaid balance of the plan without giving me advance notice. The principal balance in default shall bear interest at the contract rate, or a default rate if one has been disclosed to me, or another rate if required by applicable law.
*The following provisions applies to borrowers in Wisconsin:*
Right to Cure Default: If I am in default under this Agreement, you must give a notice of default to me pursuant to Wisconsin Statutes sec. 425.104 - 425.105. I shall have fifteen (15) calendar days from the date the notice is mailed to me to cure the default. In the event of an uncured default, you shall have all the rights and remedies for default provided under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral. You may waive any default without waiving any other subsequent or prior default by me.
No Right to Cure: Pursuant to Wis. Stat. Sec. 425.105(3), I shall not have the right to cure a default if the following occur twice during the preceding twelve (12) months: (a) I was in default on the Open-end Plan; (b) You gave me notice of the right to cure such previous default in accordance with Wis.Stat.Sec. 425.104; and (c) I cured the previous default.
Nothing in this Agreement shall be construed to restrict your ability to exercise your rights under the Wisconsin Consumer Act, Uniform Commercial Code, or other applicable law, including, but not limited to, the right to repossess the collateral.
*The following provision applies to borrowers in all other states:* Once I have defaulted, you may, at your option, declare all amounts under the Plan immediately due and payable, and I must immediately pay to you at that time the total unpaid balance, as well as the Finance Charge to date, any late charges and costs of collection permitted under law, including reasonable attorney's fees. The principal balance in default shall bear interest at the contract rate, or a default rate if one has been disclosed to me, or another rate if required by applicable law.

Right to Set-off: If I am in default, I specifically agree that federal and/or state law gives you a common-law right to "set off" my obligations to you. This means that you can apply the funds in any of my Credit Union accounts to my outstanding obligations without prior notice to me and without any legal proceeding or court proceeding subject to applicable law. This applies to all accounts, deposits and dividends whether held individually or jointly, whether held now or in the future. You can also prohibit me from withdrawing all shares and deposits in these accounts. However, this right to set-off shall not apply to any shares held in a Individual Retirement Account, Keogh Plan, or any other type of account that would lose special tax treatment if the right to set-off were imposed.

Collection Costs: I agree to pay all costs incurred by the Credit Union in collecting any amount I owe or in enforcing or protecting the Credit Union's rights under this Plan, including but not limited to, repossession and collateral disposition fees and costs; fees and costs incurred in locating collateral; appraisals; casualty damage insurance coverage. I agree that, in the event the Credit Union is entitled to a default judgment on this indebtedness, a reasonable attorney's fees shall be 10% of the principal and accrued interest due. In all other instances, I agree to pay for reasonable costs and attorney's fees incurred by the Credit Union both prior to and after judgment, in the collection of this indebtedness. I also agree to pay any additional amounts incurred by the Credit Union as a result of any appellate, bankruptcy or post-judgment proceedings, except as may be specifically limited or prohibited by applicable law.

Borrower Responsibility: I promise to notify you of any change in my name, address or employment. I promise not to apply for an advance if I know there is a reasonable probability that I will be unable to repay my obligation according to the terms of the credit extension. I promise to inform you of any new information which relates to my ability to repay my obligation. I promise not to submit false or inaccurate information or willfully conceal information regarding my creditworthiness, credit standing, or credit capacity.

Joint Plans: If this Plan has more than one borrower, it is a joint Plan and each of us is individually and jointly responsible for paying all amounts owed. You can enforce your rights under this Plan against any one of us individually or against all of us together. If we give you inconsistent instructions, you can refuse to follow those instructions or follow the instruction of your choosing, which may include choosing a member's instructions over a non-member's. Unless your written policy requires all of us to sign for an advance, each of us authorizes the other(s) to obtain advances individually and agrees to repay advances made to the other(s). Any notice mailed to one shall be considered notice mailed to all, unless applicable law requires individual notice. Any of us can remove ourselves from responsibility as a joint or co-borrower by notifying the Credit Union in writing, unless such removal would violate credit union policy or regulations. In such a case the Plan may be terminated. However, termination will not relieve any of us from joint or several liability for any obligations already incurred.

Termination: I understand that you may terminate this credit and security agreement under the following conditions:
1. Upon adverse re-evaluation of my creditworthiness.
2. If I should fail to meet the terms of the agreements.
3. Notice to Wisconsin Borrowers: If I am a married Wisconsin borrower who has been extended individual credit, the Credit Union can terminate this Plan if it receives a written notice of termination from my spouse pursuant to Wis. Stat. 766.565(5). *See State Notices below for further information.*
4. At my option, or your option, with good cause and upon written notice.
I understand that termination will not affect my obligation to pay the balance outstanding incurred prior to notice.

Unlawful Transactions: I warrant and agree that my Open-end Credit Plan will not be used to make or facilitate any illegal transaction(s) as determined by applicable law; and that any such use, including any such authorized use, will constitute an event of default under this Agreement. I agree that the Credit Union will not have any liability, responsibility or culpability whatsoever for any such use by me or any authorized user(s). I further agree to indemnify and hold the Credit Union harmless from any suits, liability, damages or adverse action of any kind that results directly or indirectly from such illegal use.

Additional Provisions:
1. I agree to provide you with a current financial statement if so requested and that no advance will be made until you have reviewed the financial statement.
2. In case any provision of this agreement is held invalid for any reason such determination shall not affect the remaining provisions of the agreement. But the agreement shall be enforced as if such provision was never included.
3. I admit that I have received a copy of this agreement, and that I have fully read and understand all of its terms and conditions.
4. My signing and endorsing of any checks or drafts issued under this agreement shows my acceptance of its terms and conditions.

Change in Terms: You may change the terms of this Plan at any time after giving any notice that may be required by applicable law. Any change in the interest rate will apply to future advances and, at your discretion and subject to any requirements of applicable law, will also apply to unpaid balances.

Governing Law: These agreements shall be construed and enforced in accordance with the laws of the State of Florida.

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" WILL MEAN ANY PERSON WHO EXECUTES THE OPEN-END CREDIT PLAN BY SIGNING THIS OPEN-END CREDIT PLAN OR ANY ADVANCE RECEIPT OR SIMILAR DOCUMENT, OR ANY PERSON WHO ENDORSES A PROCEEDS CHECK OR OTHERWISE ACCEPTS, ACCESSES, OR USES PROCEEDS UNDER THIS PLAN. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

**State Notices:**

*NOTICES TO WISCONSIN BORROWERS:* (1) If I am married and am extended individual credit, Wisconsin Statutes Section 766.56(3)(b) requires the Credit Union to notify my spouse of the extension of credit. If Credit Union receives a written notice of termination from Borrower's spouse pursuant to Wis. Stat. Section 766.565(5) in connection with this Plan, Credit Union reserves the right to declare Borrower in default of the Plan and to call the entire extension of credit due and payable notwithstanding Wis. Stat. Sections 425.103 and 425.105, to the extent not prohibited by law. If the Plan is called due and payable, I shall have certain rights to cure the default (see the "Actions Upon Default" paragraph above).
(2) Additionally, no provision of a marital property agreement, a unilateral agreement under Wis. Stat. Section 766.59, or a court decree under Wis.Stat.766.70 adversely affects the interest of the Credit Union unless prior to the time the credit is extended, the Credit Union is furnished with a copy of the agreement or statement, or has actual knowledge of the adverse provision when the obligation to the Credit Union is incurred.

*NORTH DAKOTA NOTICE TO BORROWERS PURCHASING A MOTOR VEHICLE* - THE MOTOR VEHICLE IN THIS TRANSACTION MAY BE SUBJECT TO REPOSSESSION. IF IT IS REPOSSESSED AND SOLD TO SOMEONE ELSE, AND ALL AMOUNTS DUE TO THE SECURED PARTY ARE NOT RECEIVED IN THAT SALE, THE BORROWER MAY HAVE TO PAY THE DIFFERENCE.

*NOTICE TO UTAH BORROWERS:* This written agreement is a final expression of the agreement between me and the Credit Union. This written agreement may not be contradicted by evidence of any oral agreement.

*NOTICE FOR ARIZONA OWNERS OF PROPERTY:* It is unlawful for a borrower to fail to return a motor vehicle that is subject to a security interest within thirty days after I have received notice of default. The notice will be mailed to the address I provided on this document unless I have given the Credit Union a new address. It is my responsibility to notify the Credit Union if my address changes. The maximum penalty for unlawful failure to return a motor vehicle is one year in prison and/or a fine of $150,000.

*For Vermont Residents:* NOTICE TO CO-BORROWER: MY SIGNATURE ON THIS PLAN MEANS THAT I AM EQUALLY LIABLE FOR REPAYMENT OF THIS PLAN. IF THE BORROWER DOES NOT PAY, THE CREDIT UNION HAS A LEGAL RIGHT TO COLLECT FROM ME.

*NOTICE TO CALIFORNIA RESIDENTS:* By signing this Plan, I specifically agree that the Credit Union may access the records of the California Department of Motor Vehicles from time to time to obtain my current mailing address, and by so agreeing, I am specifically waiving my rights under sections 1808.21 and 1808.22 of the California Vehicle Code.

*WASHINGTON RESIDENTS ONLY*
WARNING
UNLESS I PROVIDE YOU WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY YOUR CREDIT AGREEMENT, YOU MAY PURCHASE INSURANCE AT MY EXPENSE TO PROTECT YOUR INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT MY INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE YOU PURCHASE MAY NOT PAY ANY CLAIM I MAKE OR ANY CLAIM MADE AGAINST ME. I MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT I HAVE OBTAINED PROPER COVERAGE ELSEWHERE. I AM RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY YOU. THE COST OF THIS INSURANCE MAY BE ADDED TO MY LOAN BALANCE. IF THE COST IS ADDED TO THE LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF COVERAGE MAY BE THE DATE MY PRIOR COVERAGE LAPSED OR THE DATE I FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE YOU PURCHASE MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE I CAN OBTAIN ON MY OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS.

**BILLING RIGHTS NOTICE - KEEP THIS NOTICE FOR FUTURE USE**

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

**Notify You In Case of Errors or Questions About My Statement**

If I think my statement is wrong, or if I need more information about a transaction shown on it, I will write to you at the address listed on my statement, as soon as possible. You must hear from me no later than 60 days after you sent me the first statement on which the error or problem appeared. I may telephone you, but doing so will not preserve my rights.

In my letter, I will give you the following information:
1. My name and account number.
2. The dollar amount of the suspected error.
3. A description of the error and an explanation if I can why I believe there is an error. If I need more information, I will describe the item I am not sure about.

**My Rights and Your Responsibilities After You Receive My Written Notice**

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the statement was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my credit limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my statement that are not in question. If you find that you made a mistake on my statement, I will not have to pay any finance charges related to any questioned amount.
If you didn't make a mistake, I may have to pay finance charges and I will have to make up any missed payments on the questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my statement. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my statement was correct.

*Special Rule for Credit Card Purchases*

If I have a problem with the quality of property or services that I purchased with a credit card, and I have tried in good faith to correct the problem with the merchant, I may not have to pay the remaining amount due on the goods and services. There are two limitations on this right: (a) I must have made the purchase in my home state or, if not within my home state, within 100 miles of my current mailing address; and (b) the purchase price must have been more than $50.00. These limitations do not apply if the credit union owns or operates the merchant, or if you mailed me the advertisement for the goods or services.

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

IN THESE AGREEMENTS, THE WORDS "I," "ME," "MY" AND "MINE" WILL MEAN ANY PERSON WHO EXECUTES THE OPEN-END CREDIT PLAN BY SIGNING THIS OPEN-END CREDIT PLAN OR ANY ADVANCE RECEIPT OR SIMILAR DOCUMENT, OR ANY PERSON WHO ENDORSES A PROCEEDS CHECK OR OTHERWISE ACCEPTS, ACCESSES, OR USES PROCEEDS UNDER THIS PLAN. THE WORDS "YOU," "YOUR" AND "YOURS" MEAN THE CREDIT UNION.

## SECURITY AGREEMENT

1. **Security Interest**. By signing the Open-end Credit Plan, or by accessing, using, or otherwise accepting any funds, accounts or services under my plan, I grant the Credit Union a security interest in all goods, property, or other items purchased under this Plan (hereinafter referred to as "Collateral") either now or in the future, or in any other property given now or at the time of any future advance, or given at any other time in connection with the Open-end Plan. Any required description of the Collateral shall appear on my Advance Receipt or similar document. The security interest includes all increases, substitutions and additions to the Collateral, proceeds from any insurance on the Collateral and all earnings received from the Collateral. The security interest also includes all accessions. Accessions are things which are attached to or installed in the property now or in the future. The security interest also includes any replacements for the property which I buy within 10 days of the Advance or any extensions, renewals or refinancing of the Advance. If the value of the Collateral declines, I promise to give you more security if asked to do so. I also agree to abide by the terms of the Security Agreement and any Advance Receipt or similar document.

2. **Consensual Pledge of Shares; Consensual Lien; Statutory Lien; Right to Set-off; Administrative Freeze**. By signing this Open-end Credit Plan or by accessing, using, or otherwise accepting any funds, accounts or services, I grant the credit union, and you impress, a lien on my shares in the credit union. I acknowledge and agree that you also have similar statutory lien rights in my shares under Florida Statute section 657.033(4) as of the date I opened my credit plan, as well as the common law right to set-off and administrative freeze. "Shares" and "share accounts" means any and all funds, regardless of the source of those funds, in any joint or individual share savings account(s), share draft account(s), club, certificate, P.O.D, revocable trust or custodial account(s) or any other account whether jointly or individually held and whether your obligation under the account(s) is direct, indirect, contingent or secondary and whether held now or in the future. My pledge and your lien rights do not include any IRA, Keogh or other account which would lose special tax treatment if pledged, or any irrevocable trust or fiduciary account in which I do not have vested ownership interest.

   I understand and agree that these rights allow you to apply the funds in my share accounts to any obligations owed to you if I default or fail to pay or satisfy any obligation to you, without any legal process, court proceeding or any notice to any owner of the share accounts affected hereunder or otherwise in this Agreement, unless applicable law so requires. I specifically agree that you have the right to place an administrative freeze on any of my share accounts subject to applicable law, and such action shall not violate 11 USC 362 or other applicable law. I understand that these rights are multiple and you can exercise one or all of them pursuant to applicable law. Exercising one right does not waive the right to exercise others.

3. **Cross-Collateralization**. Property and/or shares given as security under this Plan or for any other loan I have with the credit union will secure any and all advances under this Plan as well as any account owner's joint or individual obligations to you, now or in the future, whether direct, indirect, contingent or secondary and arising from any loan or credit agreement, insufficient fund items; fees; cost, expenses, reasonable attorney's fees, or otherwise. However, property securing another debt will not secure advances under this Plan if such property is my primary residence, or are non-purchase money household goods. IF I HAVE A CREDIT CARD UNDER THIS OPEN-END PLAN, THIS CROSS-COLLATERALIZATION CLAUSE ALSO APPLIES TO THAT CREDIT CARD.

4. **Non-Transferability**. I agree that my account(s) are not assignable or transferable except to the Credit Union unless specifically authorized in writing by you.

5. **No Liability for Dishonor**. The Credit Union will not have any responsibility or liability to me or others relating to the dishonor or other return of any check, draft, ACH transaction or other order occurring as a result of you exercising your lien rights or freezing any accounts in order to protect or preserve such rights.

6. **Ownership of the Collateral**. If I am granting a security interest in property already owned by me, I promise that I own the property, free of all security interests except that given to the credit union and except for any other interests disclosed by me to the credit union prior to the advance. I promise that I have informed you of any and all co-owners of the Collateral and/or any other person with an interest in or claim against the property. If I am using the advance proceeds to buy the property that shall be used as Collateral, I agree to use those advance proceeds for the sole purpose of buying that Collateral. I agree not to sell or lease the Collateral or to use it as security for a loan with another creditor until the advance is repaid. I agree not to allow another security interest or lien to attach to the Collateral either by my actions or by operation of the law.

7. **Protecting the Security Interest**. I agree to take any steps necessary for you to perfect your security interest in the titled property. If asked to do so, I agree to sign a financing statement or similar instrument to perfect your security interest and/or to protect your security interest from the claims of others. I also agree to do whatever else you think is necessary to protect your security interest in the Collateral.

8. **Use of the Collateral**. Until the advance has been paid in full, I agree to (1) use the Collateral carefully and for the purpose it was intended and keep it in good repair; (2) Obtain your written permission before making major changes to the Collateral or changing the address where the Collateral is kept; (3) Inform you in writing before I change my address; (4) allow you to inspect the Collateral; (5) Promptly notify you if the Collateral is damaged, stolen or abused; (6) Not use the Collateral for any unlawful purpose.

9. **Notices**. You may meet all requirements for sending me a notice of any kind if you send it to me by means of United States mail, at my last given address. You may also meet this requirement by delivering these notices to me electronically provided that I have agreed to receive notices by electronic means, such as e-mail.

10. **Additional Advances**. Any additional advances made to me for the payment of taxes or assessments or liens of any kind, or premiums on authorized insurance and the interest owing thereon shall also be secured by this agreement.

11. **Disposition of Collateral**. If a default as defined in the credit agreement should occur, you have the authority, upon such default, to repossess and sell the collateral in a lawful manner. In such cases, you or your authorized representatives may, at your option, enter the premises where the collateral is kept and take possession, subject to applicable laws. You have the right to render the property pledged as collateral unusable and dispose of the collateral on the premises where the collateral is kept. If you decide to sell the collateral at a public sale, private sale or otherwise dispose of the collateral, you will provide reasonable notice if required by law and will otherwise comply with applicable state law. If you sell or otherwise dispose of the collateral you may collect from me reasonable expenses incurred in the retaking, holding and preparing the collateral for and arranging the sale of the collateral. You may also collect reasonable attorney's fees and legal expenses, permitted by applicable law, incurred in connection with disposition of the property. I understand that you have certain rights and legal remedies available to you under the Uniform Commercial Code and other applicable laws, and that you may use these rights to enforce payment if I default. In that event, I will at your request assemble the property (collateral) and make it available to you at a place of your choosing. If you decide to waive this default, it will not constitute a waiver of any other subsequent defaults.

12. **Attorney-in-Fact**. You are hereby appointed as my Attorney-in-Fact to perform any acts which you feel are necessary to protect the collateral and the security interest which this agreement creates.

13. **Survival of Obligations**. This security agreement not only binds me, but my executors, administrators, heirs and assigns.

6300 4-2008

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

CREDITOR BENEFICIARY (POLICYHOLDER)

## MIAMI POSTAL SERVICE CREDIT UNION

**MINNESOTA LIFE**

CERTIFICATE OF
GROUP CREDIT INSURANCE

Minnesota Life Insurance Company    400 Robert Street North    St. Paul, Minnesota 55101-2098

| CREDIT LIFE INSURANCE | | CREDIT DISABILITY INSURANCE | | |
|---|---|---|---|---|
| GROUP POLICY NUMBER | INSURANCE MAXIMUM | GROUP POLICY NUMBER | MAXIMUM MONTHLY DISABILITY BENEFIT | MAXIMUM LOAN REPAYMENT PERIOD* |
| 33115-G-500 | $50,000 | 33116-G-500 | $850 | 120 Months |
| MAXIMUM LOAN REPAYMENT PERIOD* | | MAX. AGGREGATE DISABILITY BENEFIT | WAITING PERIOD | RETROACTIVE BENEFIT |
| 120 Months | | $50,000 | 30 Days | Yes |

*NOTE: If the maximum loan repayment period is greater than 120 months, loans with repayment periods in excess of 120 months will be insured for full life coverage but only during the first 120 months. Disability coverage will remain in effect for the entire repayment period of up to 120 months but a maximum of only 60 monthly benefits are payable.

This certificate is issued in consideration of your application and the payment of the required premium. It summarizes the main provisions of the group policy(ies) that affect you. You may examine the group policy(ies) at the principal office of the policyholder during regular business hours.
You may contact us at the following address and telephone number if you want information about your insurance coverage or if you need help with a complaint.
Minnesota Life Insurance Company
400 Robert Street North
St. Paul, MN 55101-2098
Telephone (651) 665-3500
**Notice of your right to examine this certificate for 30 days.** It is important to us that you are satisfied with this insurance. If you are not satisfied, you may return this certificate to us or to your insurance representative within 30 days of its receipt, and you will receive a full refund of any premiums you have paid within 30 days after we receive your notice of cancellation.
**To whom will benefits be payable?** Claim payments will be made to the policyholder to reduce or extinguish your loan. If claim payments are more than the balance of your loan, remaining payments will be made to you or to your estate or, if required by law and you have named one, to a secondary beneficiary.
**What is the amount of the death benefit?** The death benefit will be the lesser of:
 (1) the unpaid balance of your loan on the date of your death; or
 (2) the maximum amount of insurance specified on your application.
If you are jointly insured and your co-debtor dies, the death benefit will be determined on the same basis. Only one death benefit is payable, even if both jointly insured debtors should die on the same date.
**Are there limitations/exclusions affecting the amount of the death benefit?** As to each advance on an open-end loan, we will not pay a claim on that advance if death occurs within 6 months after the advance is disbursed and is caused by a pre-existing medical condition as defined below.
A pre-existing medical condition is a condition for which the insured debtor received medical advice or treatment either for that same condition or a related condition within the 6 month period immediately prior to the date the advance is disbursed.
If you, whether sane or insane, die by suicide within 6 months from the effective date of your insurance, our liability is limited to an amount equal to the premium charges. For open-end outstanding balance coverage, this suicide exclusion applies to each advance disbursed to you.
The insurance effective date for an advance is the date the advance is disbursed to you.
If joint life insurance is in force, these limitations/exclusions shall apply upon the death of either jointly insured debtor.
**What is the amount of your monthly disability benefit?** Your monthly disability benefit will be an amount equal to the lesser of:
 (1) your minimum scheduled installment payment as specified in your loan agreement, excluding any delinquencies and/or late fees, due in the month in which total disability commences; or
 (2) the maximum monthly disability benefit available without evidence of insurability specified in your application if you did not submit any required evidence of insurability or, if submitted, we did not approve it; or
 (3) the maximum monthly disability benefit specified in your application.
If your minimum scheduled installment payment increases according to a procedure specified in your loan agreement to recognize periodic changes in the loan interest rate (variable interest loan), we will increase your monthly disability benefit accordingly provided:
 (1) the date of scheduled installment payment increase is after total disability commences; and
 (2) the monthly disability benefit we were paying immediately prior to the increase was not limited to either the maximum monthly disability benefit available without evidence of insurability or the maximum monthly disability benefit available.
In no event will any other increase (or decrease) in your minimum scheduled installment payment, after total disability commences, serve to change the amount of monthly disability benefit payable.
The benefit for each day of disability will be 1/30th of your monthly disability benefit amount.
**What is the definition of total disability?** During the first 12 months of disability, your complete and continuous inability, due either to sickness or injury, to perform the duties of your regular occupation. Thereafter, your complete and continuous inability, due either to sickness or injury, to engage in any occupation for which you are suited by age, training or experience.
**For how long will monthly disability benefits be paid?** We will pay the monthly disability benefit for any continuous period of total disability until any one of the following conditions are met:

Certificate continued on page 9.

| BORROWER NAME | ACCOUNT NUMBER |
|---|---|
| SANDRA B FORD | |

(1) the payments total an amount equal to the unpaid balance of your loan on the date total disability commences, including principal and interest, under the terms of the loan note or agreement; or
(2) sixty monthly disability benefits have been paid; or
(3) the maximum aggregate disability benefit specified in your application has been paid; or
(4) your loan reaches its initial scheduled maturity date or, if the maturity date has been adjusted according to a procedure specified in the loan agreement to recognize periodic changes in the loan interest rate (variable interest loan), your loan reaches its adjusted maturity date; or
(5) you reach age 66.

**What disabilities are not covered?** We will not insure any loss resulting directly or indirectly from any total disability caused by:
(1) intentionally self-inflicted injuries; or
(2) normal pregnancies, normal childbirths, or elective abortions. Complications due to pregnancy or childbirth will be covered only if the complications themselves are totally disabling; or
(3) a condition for which you received medical treatment or advice either for that same condition or a related condition within the six month period immediately prior to the date of your insurance. However, total disability resulting from any such condition or related condition will not be excluded if total disability commences six months or more after the date of your insurance. For open-end coverage, this pre-existing condition exclusion applies to each advance disbursed to you and the insurance effective date for the advance is the date the advance is disbursed to you.

**When will benefits be payable?** The death benefit will be payable when we receive a certified copy of the death certificate and a statement from the policyholder.

Disability benefits will be payable when we receive proof you have become totally disabled while you are insured and prior to your 66th birthday. Also, you must be under the regular care of a physician for the sickness or injury. We will pay the monthly disability benefit at the end of each month of continuous total disability following the expiration of the waiting period. If the retroactive benefit is effective, we will pay the monthly disability benefit at the end of each month of continuous total disability from the date total disability commences but benefits will not begin until the waiting period expires.

**When must notice of a disability claim be given?** You must give us notice within 30 days or as soon as possible after the occurrence or commencement of any loss covered by the group policy. The notice of claim must be in writing and given to our authorized agent or sent to our home office in St. Paul, Minnesota. We shall have the right to have you medically examined at our own expense as often as may reasonably be required while a disability claim is being considered or paid.

As deemed necessary to determine continued disability we may request written proof of loss during the course of a claim.

**How are premiums calculated?** Premiums for your insurance are calculated each month on the remaining insured outstanding balance of your loan using the premium rate in effect under the group policy. The premium rate is subject to change not more than once each year upon 45 days prior written notice to you.

**How are refunds calculated?** If your insurance terminates before the scheduled maturity date of your loan or the premium you were charged is greater than the premium required for your age and amount of insurance, the unearned premium will be refunded to you. The method of calculating refunds is the "Pro Rata" formula. However, refunds of less than $1.00 will not be made.

If 16 days or more of a loan month have been earned, the refund will be computed from the end of the loan month; if 15 days or less of a loan month have been earned, the refund will be computed from the beginning of the loan month.

**When does your insurance terminate?** Your insurance will terminate on the date any of the following events occurs:
(1) your loan is charged off or discharged through payment, prepayment, renewal or refinancing; or
(2) your loan reaches its scheduled maturity date or, if the maturity date has been adjusted according to a procedure specified in the loan agreement to recognize periodic changes in the loan interest rate (variable interest loan), the date your loan reaches the adjusted maturity date; or
(3) an open-end loan agreement reaches its expiration date; or
(4) the policyholder transfers the loan without recourse and no longer services the loan; or
(5) any required loan repayment which includes your insurance premium is more than 90 days overdue; or
(6) you request in writing that your insurance be terminated; or
(7) the group policy terminates provided you receive 30 days written notice; or
(8) you die. If joint life insurance is in force, your insurance terminates when either you or your co-debtor dies; or
(9) you have disability insurance and we have paid 60 monthly disability benefits; or
(10) you have disability insurance and you reach age 66; or
(11) you have life insurance and the Maximum Term of Insurance of 120 months expires; or
(12) you have life insurance and you reach age 71. If joint life insurance is in force and insurance terminates on one of the joint insured debtors due to the attainment of age 71, insurance will continue on the other debtor under single life insurance coverage.

**What if your age is misstated?** If you stated you were under age 66 when you applied for disability insurance but you were not, we will refund your premium when we discover this and no benefits will be paid. If you or your co-debtor stated you were under age 71 when you applied for life insurance but you were not, we will refund your premium when we discover this and no benefits will be paid.

**Can we contest your insurance?** After your insurance has been in force during your lifetime for two years from the effective date of your insurance (excluding any period during which you are disabled), we cannot contest your insurance for any loss that is incurred more than two years after the effective date, except for the nonpayment of premium.

# LIEN SATISFACTION

Mail Lien Satisfaction to: Dept of Highway Safety and Motor Vehicles, Neil Kirkman Building, Tallahassee, FL 32399-0500

A03693

| Identification Number | Year | Make | Body | WT-L-BHP | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| JNRAS08U08X104576 | 2008 | INFI | UT | 4009 | | 100346517 |

Date of Issue 07/07/2009



**Registered Owner:**
SANDRA BUSSEY FORD
1230 NW 178TH TER
MIAMI    FL 33169-4169

**Lien Release**
Interest in the described vehicle is hereby released
By_____
Title_____
Date_____

**IMPORTANT INFORMATION**
1. When ownership of the vehicle described herein is transferred, the seller MUST complete in full the Transfer of Title by Seller section at the bottom of the certificate of title.
2. Upon sale of this vehicle, the seller must complete the notice of sale on the reverse side of this form.
3. Remove your license plate from the vehicle.
4. See the web address below for more information and the appropriate forms required for the purchaser to title and register the vehicle, mobile home or vessel: http://www.hsmv.state.fl.us/html/titlinf.html

**Mail To:**
06/02/2009
MPSCU
2190 NW 72ND AVE
MIAMI    FL 33122-1824

---

# CERTIFICATE OF TITLE

| Identification Number | Year | Make | Body | WT-Cost | Vessel Regis. No. | Title Number |
|---|---|---|---|---|---|---|
| JNRAS08U08X104576 | 2008 | INFI | UT | 4009 | | 100346517 |

| Prev. State | Color | Primary Brand | Secondary Brand | No. of Brands | Use | Prev. Issue Date |
|---|---|---|---|---|---|---|
| FL | SIL/SIL | | | | PRIVATE | 07/07/2009 |

| Odometer Status or Vessel Manufacturer or Off use | Hull Material | Prop | Date of Issue |
|---|---|---|---|
| 22165 MILES   05/12/2009 ACTUAL | | | 07/07/2009 |

**Lien Release**
Interest in the described vehicle is hereby released
By_____
Title_____
Date_____

**Registered Owner**
SANDRA BUSSEY FORD
1230 NW 178TH TER
MIAMI    FL 33169-4169

**1st Lienholder**
06/02/2009
MIAMI POSTAL SERVICE CREDIT UNION
2190 NW 72 AVE
MIAMI    FL 33122

DIVISION OF MOTOR VEHICLES            TALLAHASSEE            FLORIDA            DEPARTMENT OF HIGHWAY SAFETY AND MOTOR VEHICLES

Carl A. Ford, Director

Control Number  101388217

Julie L. Jones, Executive Director

**TRANSFER OF TITLE BY SELLER** (This section must be completed at the time of sale.)

Federal and/or state law requires that the seller state the mileage, purchaser's name, selling price and date sold in connection with the transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

This title is warranted to be free from any liens except as noted on the face of the certificate and the motor vehicle or vessel described is hereby transferred to:

Seller Must Enter Purchaser's Name: _____   Address: _____
Seller Must Enter Selling Price: _____   Seller Must Enter Date Sold: _____
I/We state that this ☐ 5 or ☐ 6 digit odometer now reads |_|_|_|_|_|[x] (no tenths) miles, date read _____ and I hereby certify that to the best of my knowledge the odometer reading:
☐ 1. reflects ACTUAL MILEAGE.   ☐ 2. Is IN EXCESS OF ITS MECHANICAL LIMITS.   ☐ 3. Is NOT THE ACTUAL MILEAGE.

UNDER PENALTIES OF PERJURY, I DECLARE THAT I HAVE READ THE FOREGOING DOCUMENT AND THAT THE FACTS STATED IN IT ARE TRUE.

SELLER Must Sign Here: _____   CO-SELLER Must Sign Here: _____
Print Here: _____            Print Here: _____
Selling Dealer's License Number: _____   Tax No.: _____   Tax Collected: _____
Auction Name: _____   License Number: _____

PURCHASER Must Sign Here: _____   CO-PURCHASER Must Sign Here: _____

**STATE OF FLORIDA**

VOID IF ALTERED

EXHIBIT B